IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANNIE HOWELL, as Personal | } | |
| Representative of the ESTATE | } | |
| of EDWARD TARVER, deceased, | } | |
| | } | CIVIL ACTION NO. |
| Plaintiff, | } | 07-AR-1872-S |
| | } | |
| v. | } | |
| | } | |
| RS STAFFING SERVICES, INC., | } | |
| et al., | } | |
| | } | |
| Defendants. | } | |

**<u>MEMORANDUM OPINION</u>**

Annie Howell ("Howell"), as personal representative of the estate of Edward Tarver ("Tarver"), deceased, inherited from Tarver, at his death, his pending suit against his former employer, RS Staffing Services, Inc., ("RS Staffing"), against Joe Bledsoe ("Bledsoe"), who was a manager for RS Staffing, and against Tammy Barefield ("Barefield"), another RS Staffing manager. Tarver[1] made the following claims: (1) age discrimination in violation of the Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code § 25-1-21; (2) religious discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (3) the Alabama tort of intentional infliction of emotional distress ("IIED"); and (4) the Alabama tort of

---

[1]    Although Howell in her representative capacity is technically the plaintiff, this court will, for purposes of this opinion and for clarity's sake, speak as if Tarver is still alive and is the plaintiff.

negligent hiring, training, supervision and retention ("negligent supervision"). Tarver conspicuously did not mention the ADEA. If he thought that proceeding only under Alabama's equivalent age discrimination statute would prevent defendants from removing, Tarver was disappointed. The court has previously granted Barefield's motion to dismiss, and the clerk has entered a default against Bledsoe with leave to prove damages. The court has now before it RS Staffing's motion for summary judgment together with its motion to strike certain documentary evidence (Court Doc. 63, filed Jan. 21, 2009) submitted by Tarver, and Tarver's motions to strike the declarations of Amanda Collins (Court Doc. 53, filed Jan. 14, 2009), Andre Howard (Court Doc. 65, filed Jan. 21, 2009), Joe Bledsoe (Court Doc. 66, filed Jan. 21, 2009), and Tammy Barefield (Court Doc. 67, filed Jan. 21, 2009). For the reasons that follow, RS Staffing's motion for summary judgment will be granted in part and denied in part. Tarver's motion to voluntarily dismiss his hostile environment claim brought under Title VII will be granted. The motions to strike will be denied.

## FACTS[2]

---

[2]    The court takes as true the facts alleged in the complaint and draws all reasonable inferences in plaintiff's favor. *See Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). The complaint's allegations must plausibly suggest a right to relief, raising that right "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 999

R.S. Staffing provides temporary staffing and facility management services to the Bell South Recovery Center ("Bell South") in Talston, Alabama. Although R.S. Staffing is the employer of the relevant crews that work at Bell South, Bell South maintains daily supervision of the crews and reports to R.S. Staffing if work is found to be insufficient, or if it finds that a particular crew member is performing unsatisfactorily. Tarver commenced his employment with R.S. Staffing in October of 1999. He drove a forklift and assisted in the loading and unloading of recycling material at Bell South. It is undisputed that during his time at RS Staffing Tarver had a strong record of attendance and was named "Employee of the Month" for April, 2004.

Tarver is a black male who was fifty-three years old at the time of the adverse employment action he complains of, namely, his termination. At that time, he was also the oldest member of his particular work crew and, with the exception of Andre Howard ("Howard") who was his supervisor, its most senior member. Tarver was at all relevant times an ordained minister in charge of his own church and congregation, known as Care Ministry Full Gospel Church. RS Staffing knew this. Tarver also conducted bible studies at work with fellow crew members, something RS Staffing also knew about and

_____

(11th Cir. 1992).

-3-

allowed without incident. Howard was a member of Tarver's church, where he participated as a governing board member.

Due to work generated by hurricane Katrina, Bell South requested that all crews start working weekends. On February 18, 2006, Howard advised the crew, which included Tarver, that they had to work the following day, Sunday, February 19, 2006. Tarver says that Howard told him and Terrance Cunningham ("Cunningham"), a fellow crew member and Tarver's associate minister, that they would not be required to work because of their religious beliefs. He supports this allegation with the affidavit of Cunningham. Tarver also offers his Equal Employment Opportunity Commission ("EEOC") affidavit, in which he testifies that "Andre Howard, my supervisor, advised the crew that we would not work the following day, which was a Sunday." (Court Doc. 55-2, filed Jan. 14, 2009). The conflicting details offered by Tarver as to the Sunday in question boil down to one common central contention by Tarver, namely, that he and other crew members believed they were exempt from working on the Sunday in question. In stark contrast, RS Staffing offers the affidavit of Howard, who admittedly knew of Tarver's ministerial duties, who claims that he told the crew, including Tarver, that they would be expected to work on Sunday. However, Howard also claims to have told the crew that "because the weather was predicted to be bad and that road conditions might be hazardous, that they should make their own decision about whether it was safe

-4-

to come in."[3] (Howard Aff. p.2). Howard says that no crew member, including Tarver, told him that they could not work that Sunday or asked to be excused. As the court must, it takes as true the evidence of Tarver, the non-moving party, and draws all reasonable inferences in his favor.

Taking Tarver's evidence as true, managers at RS Staffing were aware that Tarver did not work on Sunday because of his religious beliefs.

> In previous conversations with Tripp, a Bell South manager, and Mr. Bledsoe, Mr. Tarver and I have specifically addressed that we could not work on Sunday because of our religious beliefs and that we were ministers with a higher obligation to our Lord and congregation. . . . Because of our conversation Reverend Tarver and I were never asked to work on Sunday and Bernard Smith, also on our crew, was assigned to work this day.

(Cunningham Aff. ¶ 5). RS Staffing has submitted nothing from "Tripp," the Bell South manager reported by Cunningham. And, Bledsoe, while admitting in his affidavit that he was aware that Tarver was a minister, denies ever being asked to be excused from Sunday work by any RS Staffing employee. It is undisputed that Tarver did not come to work that particular Sunday. In fact, none of the crew came in on Sunday. As a result, Bell South contacted RS Staffing and complained that the crew failed to show up. On Monday, February 20, 2006, after working a full shift, Tarver received a phone call from Barefield, a manager at RS Staffing, informing him

---

[3]      Weather conditions on that day are disputed, as is the allegation that Howard made this statement.

that he needed to come into the office and gather his personal property. Tarver was given no reason for this order, even when he expressed incredulity. According to RS Staffing, Barefield, consistent with past practices, told Tarver he would have to call the corporate offices in Georgia regarding the reason for his termination. The next day, Tarver attempted to call Bledsoe to find out why he was being told to come and gather his property. He left several messages, none of which were returned. On the same day Tarver was terminated, Bledsoe suspended Howard for one week for the failure of his crew to come to work on the Sunday in question. No other crew member was punished for failing to show up on that Sunday. Tarver was replaced with an individual under the age of 40.

RS Staffing, in support of its Rule 56 motion, offers the following rationale for Tarver's termination. On February 20, 2009, Bledsoe visited the Bell South facility and met with Bell South managers, who demanded that RS Staffing hold Howard accountable for the failure of his crew to report to work on Sunday. As already noted, Bledsoe suspended Howard for a week. Bledsoe says that Bell South also informed him that Tarver could no longer work at Bell South's facility, complaining that Tarver "was not productive, . . . that they observed him spending an inordinate amount of time not actively working." (Bledsoe Aff. ¶ 8). This was not the first time, according to Bledsoe, that Bell South had complained about Tarver's lack of productivity. And, Howard testified that, a few months

before Tarver's termination, a Bell South manager complained to him that he had caught Tarver sleeping on the job. There is no record of these complaints in Tarver's employment file. According to RS Staffing, it terminated Tarver only at the direction of Bell South. RS Staffing refers to this as a "termination due to client directive." (Bledsoe Aff. ¶ 9, Barefield Aff. ¶ 9). According to RS Staffing, it has, in similar cases, terminated other individuals who were younger than Tarver and who were not ministers. Although Tarver contends that RS Staffing responded to the EEOC charge of discrimination by providing a rationale different from the one it now asserts, the degree of RS Staffing's consistency or inconsistency is still an open question. (*See* Court Doc. 55-6 p. 18, filed Jan. 14, 2009).

RS Staffing never implemented its progressive discipline policy before firing Tarver without explanation. It contends that progressive discipline was unwarranted in this case because Tarver was terminated as a result of client directive, not because RS Staffing believed that Tarver had performed poorly. RS Staffing's progressive discipline policy states: "The Company reserves the right to bypass the disciplinary steps and base its disciplinary action on the severity, frequency, or combination of infractions when circumstances warrant immediate action, up to and including termination." (Court Doc. 55-5 p. 13, filed Jan. 14, 2009).

Tarver filed a complaint with the EEOC before he had been given any reason by RS Staffing for his termination. After receiving his right-to-sue, Tarver filed a complaint in the Circuit Court of Jefferson County, Alabama, on August 30, 2007. The case was properly removed to this court on October 11, 2007. On May 6, 2008, a default was entered against Bledsoe. On September 10, 2008, after Tarver's death, a motion to substitute Howell, as personal representative, was filed and granted. On October 28, 2008, the court granted defendant Barefield's motion for judgment on the pleadings. This order left several claims pending against RS Staffing upon which liability is contested, and several claims against Bledsoe, some of which are not viable on their face and as to some of which liability has been established by default.

## MOTIONS TO STRIKE[4]

*RS Staffing's motion to strike documentary evidence*

RS Staffing's motion to strike certain documents subpoenaed from the Alabama Department of Industrial Relations ("ADIR") alleges that the ADIR sent said documents to plaintiff's counsel on October 2, 2008, and that counsel's failure to disclose the documents prior to January 14, 2009, when Tarver submitted them as part of his evidentiary submission in opposition to RS Staffing's motion for summary judgment, violated Rule 26 of Fed. R. Civ. P. In

---

[4]    To the extent that the court denies a motion to strike, that motion is subject to renewal at trial depending on how and for what purpose the party seeks to introduce the evidence.

response, Tarver has produced evidence that Tarver's counsel did not receive the documents until January 14, 2009, the day they were submitted to the court. Tarver's explanation is satisfactory. Therefore, RS Staffing's motion to strike the documents will be denied.

*Tarver's motions to strike declarations*

Tarver asks the court to strike the declarations of Howard, Bledsoe, and Barefield filed by RS Staffing. Tarver points to sentences and paragraphs within each declaration as being violative of various evidentiary proscriptions. In turn, RS Staffing points out that each affidavit contains an affirmative statement that the contents are based on the personal knowledge of the affiant, that the affidavits contain personal knowledge of relevant conduct, and that the information contained within the affidavits is not being offered for the truth of the matters asserted. RS Staffing's response is well-taken. Tarver's motions to strike the declarations of Howard, Bledsoe, and Barefield will be denied.[5]

Tarver also asks the court to strike the declaration of Amanda Collins ("Collins") because Collins was not disclosed as a witness during Rule 26 mandatory disclosures. RS Staffing responds that Collins is not a "prospective witness," that her declaration serves only to summarize and recite the contents of documents with which

---

[5]      To the extent information in the affidavits could be considered for the truth of the matter asserted, the court will refrain from so considering it. The court will consider all information as it would be admissible. The information will not be considered for an inadmissible purpose.

she is familiar in her role as records custodian for RS Staffing, and that, in any event, her declaration does not cause Tarver any undue prejudice or harm. Rule 37(c) states:

> If a party fails to provide information or **identify a witness** as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified **or is harmless.**

Fed. R. Civ. P. 37(c)(emphasis added). If Collins is not a prospective witness, the court can consider the information she provides when ruling on a Rule 56 motion.[6] Further, the court tends to agree with RS Staffing that consideration of Collin's declaration, which is based on documents as to which Tarver had prior knowledge and which were identified during initial disclosures, would not cause undue prejudice or harm. Tarver's motion to strike the declaration of Collins will be denied.

*RS Staffing's unfiled motion to strike Tarver's EEOC affidavit*

In its motion for summary judgment, RS Staffing asks the court not to consider Tarver's EEOC affidavit, reasoning that it is inadmissible hearsay which cannot be reduced to admissible evidence. In support, it cites Rule 807 of the Federal Rules of Evidence.

> A statement not specifically covered by Rule 803 or 804 but **having equivalent circumstantial guarantees of trustworthiness,** is not excluded by the hearsay rule, if

---

[6]     While Fed. R. Civ. P. 56(e) requires that affidavits be supported by admissible evidence, it does not require that affiants be listed as witnesses for trial. *See* Fed. R. Civ. P. 56(e).

the court determines that (A) the statement is offered as
evidence of a material fact; (B) the statement is more
probative on the point for which it is offered than any
other evidence which the proponent can procure through
reasonable efforts; and (C) the general purposes of these
rules and the interests of justice will best be served by
admission of the statement into evidence.

Fed. R. Evid. 807 (emphasis added).

Courts have emphasized that the residual exception to the
hearsay rules must "be limited to circumstances evidencing a clear
basis of trustworthiness, [else] exceptions to the rule against
hearsay could swallow the rule." *Central Freight Lines v. N.L.R.B.,*
653 F.2d 1023, 1026 (5th Cir. Unit A 1981). In deciding whether
Tarver's EEOC affidavit should be considered at this juncture, the
court must weigh the factors for and against admissibility. The
statements in Tarver's affidavit were made under penalty of
perjury. The testimony concerns a subject matter within Tarver's
personal knowledge, and the testimony was given shortly after the
offending events allegedly occurred. Further, Tarver never recanted
his testimony while alive. In fact, he initiated suit based upon
these same allegations. These factors all weigh in favor of
admissibility. There are also substantial factors weighing against
admissibility. Tarver was not subject to cross-examination, the
EEOC affidavit was made in anticipation of potential litigation,
and Tarver was an interested party.

Based on these facts, the court would find that Tarver's EEOC
affidavit is inadmissible except for the fact that corroborative

evidence exists to support almost every material hearsay statement made by Tarver in the affidavit. It is obvious that, if the court should disregard the affidavit, it could come to the same conclusion it reaches based on other evidentiary submissions. For example, the affidavit of Cunningham confirms Tarver's statements about the Sunday in question, at least to the extent that Tarver alleges that he was excused from Sunday work, as well as several other details. Similarly, other facts asserted in Tarver's affidavit can be found in defendant's submissions, namely, the affidavits of Howard and Barefield. For the foregoing reasons, RS Staffing's unfiled but assumed motion to strike Tarver's EEOC affidavit will be denied. Whether the affidavit in its entirety will be received into evidence at trial is a matter not yet determined.

## **ANALYSIS**

*Claim for Age Discrimination under the AADEA*

Tarver alleges that he was terminated based on his age in violation of the AADEA, Ala. Code § 25-1-20, *et seq.* The AADEA prohibits an employer from discriminating "in employment against a worker 40 years of age and over in hiring, job retention, compensation, or other terms or conditions of employment." Ala. Code § 25-1-21. The same order and allocation of proof in cases under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981A, 2000e through 2000e-17, govern suits under the

AADEA. *See Santini v. Cytec Indus., Inc.,* 537 F. Supp. 2d 1230, 1239 (S.D. Ala. 2008); *Bonham v. Regions Mortgage, Inc.*, 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001)(quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000)(en banc)). An employee "may prove discrimination by relying on either direct, circumstantial, or statistical evidence." *Santini*, 537 F. Supp. 2d at 1239-40 (citing *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995)). Tarver has not offered any statistical or direct evidence of age discrimination.[7]

To evaluate AADEA [ADEA] claims that are based on circumstantial evidence, the Eleventh Circuit uses the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Chapman*, 229 F.3d at 1024. Under this framework, a *prima facie* case of discrimination can be established by showing that the employee: "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the

---

[7]     In Cunningham's affidavit, he testifies: "During the time we worked together, I often heard discussions from employees that management thought Mr. Tarver was 'getting old.' I have also heard Tammy Barefield comment to me and others that Mr. Tarver was being targeted because he had a knee injury." (Cunningham Aff. ¶ 11). The first sentence of this statement is inadmissible hearsay evidence. Fed. R. Evid. 801(c), 802. Thus, it will not be considered by the court in ruling on the motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(1). The second sentence of this statement could possibly be considered by the court in ruling on the motion. It does not, however, constitute direct evidence of discrimination, which Howell no doubt realizes. "Direct evidence is evidence which, if believed, proves the existence of discriminatory motive without inference or presumption." *Santini*, 537 F. Supp. 2d at 1240 (internal quotation marks omitted). And, for that matter, there is no argument made by the parties that it should be viewed as circumstantial evidence of age discrimination.

job, and (4) was replaced by or otherwise lost a position to a younger individual." *Id.* (citing *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997)); *Santini*, 537 F. Supp. 2d at 1240.

If the employee establishes a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Chapman*, 229 F.3d at 1024. The burden on the employer is one of production only; "it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (internal quotation marks omitted). If the employer provides a reason,

> the presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.

*Id.* at 1024-25 (internal quotation marks omitted). At this stage, in order to survive summary judgment, the employee must provide evidence sufficient to "allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." *Santini*, 537 F. Supp. 2d at 1240 (citing *Miller v. Bed, Bath & Beyond, Inc.*, 185 F. Supp. 2d 1253, 1270 (N.D. Ala. 2002)). The employee can show that the employer's proffer should not be believed or that, "in light of all

of the evidence, a discriminatory reason more likely motivated the decision." *Id.* at 1241.

The parties agree that Tarver has met the first three prongs of the *prima facie* showing, namely (1) that Tarver was over the age of forty (2) that he suffered the severest of adverse employment actions, termination, (3) and that he was qualified to do the job. Thus, the question is whether Tarver has presented sufficient evidence to show that he was replaced by a younger person. Cunningham testifies that Tarver was replaced by an individual who "appeared to be in the twenties or early thirties." (Cunningham Aff. ¶ 12). RS Staffing neglects to address this testimony, instead focusing on the issue of its legitimate, non-discriminatory reason. Tarver has clearly met his burden of making out a *prima facie* case of age discrimination.

A *prima facie* case having been established, the burden shifted to RS Staffing to articulate a legitimate, nondiscriminatory reason for firing Tarver. RS Staffing proffers that Tarver's termination was the result of client pressure, specifically, Bell South's complaint that Tarver had been caught sleeping on the job, consistently spent an excessive amount of time socializing with Howard during working hours, and failed to come to work. Tarver's termination is closely temporally related to his failure to show up for work on a Sunday. Thus, a fact-finder can infer that the "no-show" provided a motivation for Bell South to

request Tarver's termination, if, in fact, it made such a request, and there is, thus far, no evidence from any employee of Bell South to the contrary.

Only because RS Staffing's burden of presenting a legitimate reason is minimal does the court find that it has articulated a legitimate reason for the termination, thus requiring Tarver to prove the articulated reason to be pretext.[8]

There are two issues that intrigue the court but that have not been discussed in the briefs. The first is whether an unreasonable request by an important client of the employer, or a request that arises from a client motivation that would be proscribed if attributed to the employer, can be a legitimate, non-discriminatory reason for termination. No cases have been cited on this subject. Hypothetically, can an employer fire its black employee because its best customer says "we don't want any blacks around" ? Put another way, can an employer in making a decision based on its customer's wishes defend that decision by saying, "The customer is always right"? The other intriguing issue is whether Tarver's motivation not to show up to work on the Sunday in question following Katrina

---

[8]    The court keeps in mind counsel provided by the Eleventh Circuit on this matter:

> Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.

*Chapman*, 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991))(internal quotation marks omitted).

was out of religious conviction or because he had another paying
job to perform on that day.

Although this court has doubts about it, Tarver seems to
concede that the dispositive issue in deciding whether the AADEA
claim can proceed is whether RS Staffing's reason was "pretext." He
argues that pretext is shown by (1) RS Staffing's failure to follow
its written progressive discipline policy, (2) RS Staffing's
treatment of Tarver's fellow crew members who also did not report
to work on Sunday, and (3) RS Staffing's failure to offer Tarver a
reason for his termination and its failure to offer consistent
reasons once a reason was provided. The court's inquiry at this
stage is "whether a jury could reasonably infer discrimination if
the facts presented [by Tarver] remain unrebutted." *Damon v.*
*Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.
1999). Tarver has made the requisite showing of pretext even
without relying on the obvious fact that RS Staffing cannot under
all circumstances delegate or abdicate its employment decision-
making to its client, even its most important client.

Tarver seems to be chomping at the bit to argue to a jury that
RS Staffing's proffered reason for terminating him, namely, Bell
South's demand, was merely pretext for discrimination based on his
age (and/or religious practices). Tarver makes much of RS
Staffing's failure to follow its written progressive discipline
policy, along with its failure to inform him about Bell South's

-17-

complaints. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006)("[A]n employer's deviation from its own standard procedures may serve as evidence of pretext.")(citing a string of cases). Although it is true that RS Staffing's Employee Handbook, which sets forth its disciplinary policy, allows RS Staffing to act without following the tiered steps of discipline, there is room for a jury to conclude that Tarver was terminated for reasons related to his age, rather than because of undocumented complaints by Bell South, especially when Tarver was replaced by a younger person. RS Staffing will be able to argue, and a jury may believe, that progressive discipline was not required, because the client's complaints called for termination instead of discipline and was necessary for maintaining a good relationship with Bell South. There is, however, a justifiable inference to be drawn that, if client complaint is important enough to make RS Staffing fire an employee it otherwise finds no fault with, the client's complaints over time should call for some measure of progressive discipline or at least that the employer maintain a record that such complaints had been made. The absence of progressive discipline and internal records of client complaint leave ample room for an inference of impermissible age discrimination. The absence of evidence from Bell South speaks loudly.

   *Religious Discrimination under Title VII*

As an alternative or overlapping claim of proscribed employer conduct, Tarver points to RS Staffing's alleged disparate treatment of his fellow crew-members, who, like him, did not report to work on Sunday. Title VII does not allow the disparate treatment of an employee based on religion. Howard, crew supervisor, was merely suspended. Termination is the ultimate disciplne. The evidence shows that no members of Tarver's crew, except for Howard and Tarver, were disciplined for failure to work on Sunday. Again, RS Staffing gives as its reason for Tarver's termination client-direction, related to a series of performance complaints allegedly not applicable to the other members of Tarver's crew. If RS Staffing precommitted to Tarver not to make him work on Sunday, did it assume a duty protectable by Title VII not to be influenced by a client who needed Tarver's services on a Sunday and who was mad about Tarver's failure to show up? This leaves the court or jury to decide whether to attribute Bell South's motives to RS Staffing and what the motives actually were. In its motion for summary judgment, RS Staffing states: "Bell South **demanded** Plaintiff's termination as a result of a culmination of failing to report to work on Sunday . . . ." (emphasis added). Was RS Staffing required, as part of an express or implied obligation to Tarver not to discriminate against him based on his religious practice, to argue with or to resist Bell South? This court does not know the answer to this question. It is a jury question.

The fact that RS Staffing, under the circumstances, failed to offer Tarver a reason for the termination at the moment of termination may be understandable. If RS Staffing thereafter provided Tarver with shifting reasons for the termination, it would constitute circumstantial evidence of pretext. *See Hurlbert,* 439 F.3d at 1298 ("We have recognized that an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext.")(citing *Wascura v. City of South Miami*, 257 F.3d 1238, 1245-46 (11th Cir. 2001)). In response to the EEOC charge of discrimination, RS Staffing provided the following rationale for its action:

> Over the course of several months Charging Party was reported by the customer as spending too much time sitting around in the office, conversing with various individuals. . . . Charging Party was terminated . . . [because] the customer stated it no longer needed Charging Party's services, which [RS Staffing] reasonably believed stemmed from prior complaints that Charging Party was being paid to work at times when he was engaged in non-work activities.

(Doc. 55-6, p. 19, filed Jan. 14, 2009). Tarver's argument that there are inconsistencies between reasons offered by RS Staffing for its action may be his weakest argument, but the court must draw all inferences in Tarver's favor. The court finds that he has made the requisite showing of pretext.

In addition to his claim that he was discriminated against based on his religion, Tarver alleges he suffered under a hostile working environment based upon his religious beliefs, and was

retaliated against for voicing concerns over rules allowing discriminatory conduct. In his reply to RS Staffing's Rule 56 motion, Tarver moves to voluntarily dismiss the hostile environment claim. That motion will be granted.

RS Staffing seemingly concedes that Tarver had a *bona fide* religious belief that conflicted with the Sunday work requirement. The court will not hold RS Staffing to such a concession at trial. RS Staffing denies that Tarver can prove that he informed RS Staffing that his religious beliefs would require him to miss this particular or any other Sunday work assignment. However, the record reflects that Howard, on the Sunday in question, "acknowledged that he knew [Tarver and Cunningham] could not work on Sunday because of [their] religious beliefs [and] stated, 'You two go ahead and take care of the church and don't worry about coming in Sunday.'" (Cunningham Aff. ¶ 4). Cunningham's affidavit also reflects that he and Tarver specifically told Tripp and Bledsoe that they "could not work on Sunday because of [their] religious beliefs." (Cunningham Aff. ¶ 5). According to Cunningham, "[w]eekend work had never been an issue until January 2006 when we required to start working 7 days a week. Because of our conversation Reverend Tarver and I were never asked to work on Sunday." (Cunningham Aff. ¶ 5). Further, Tarver's EEOC affidavit reflects that "[e]veryone at RS Staffing was aware of my Sunday religious duties," (Tarver Aff. p.2), and the record confirms that RS Staffing knew that Tarver was

a minister. Again, was this a conflict of loyalty as between competing employers, or was it a serious matter of religious belief and/or practice? Even Howard, who claims that Tarver failed to tell him that he could not come to work because of his religious beliefs, follows with, "and, in any event, I was already aware that he was a minister." (Howard Aff. ¶ 7).

RS Staffing's continued insistence that Tarver was discharged for having offended a customer, so that RS Staffing was only "going along to get along," is something for a jury to judge as to whether that motive is within the prerogative of any employer of an "at will" employee and is not proscribed by Title VII. RS Staffing plainly admits that Tarver's failing to report to work on Sunday was taken into consideration by it, if only indirectly. (*See* Def.'s Mot. for Summ. J. ¶ 7). A jury could reasonably infer by the temporal proximity between Tarver's failure to come to work and Tarver's termination that there is a connection. The fact that Tarver did not engage in the proper procedures for requesting time off is not dispositive in light of the contention, supported by evidence, that Howard, Tarver's supervisor, told him that he was not required to work on Sunday. In light of the fact that RS Staffing does not attempt to demonstrate that it was unable reasonably to accommodate Tarver's religious observance without undue hardship, its Rule 56 motion on the Title VII claim will be denied.

*Retaliation under Title VII*

To make out a *prima facie* case of retaliation under Title VII, the employee must show that (1) "he engaged in statutorily protected activity, [2] he suffered a materially adverse action, and, finally, [3] there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1277 (11th Cir. 2008)(citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). If the employee makes this showing, the burden of production shifts to the employer "to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." *Id.* (citing *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073, 1075 n. 54 (11th Cir. 1995)). The burden then shifts back to the employee to show pretext. *See id.*

RS Staffing concedes that Tarver has satisfied the first two prongs, taking issue only with the third prong, causal connection. The court finds that Tarver has sufficiently shown a causal relationship and has, thus, made out a *prima facie* case. Circumstantial evidence may be used to prove the causal element. *See id.* All that is required of Tarver at this stage is a showing that "the protected activity and the adverse action were not wholly unrelated." *Id.* at 1278 (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)); *see also Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 978 n.52 (11th Cir. 2008)("To

show the adverse action was causally related to the employee's protected expression, the plaintiff must prove that the protected activity and the adverse action are not completely unrelated."). RS Staffing argues that Tarver has failed to show that it was aware of the protected conduct at the time he was terminated. The court has already found that there is evidence upon which a reasonable jury could infer that RS Staffing was aware of Tarver's religious commitments when it terminated him. The temporal proximity of his Sunday "no show" and his termination, together with RS Staffing's own statement that his "no show" was considered when making the decision, is evidence of causality. *See Davis*, 516 F.3d at 978 n.52 (stating "for temporal progression to be enough, the events must be in 'very close' proximity.")(quoting *Clark County Sch. Distr. v. Breeden*, 532 U.S. 268, 273 (2001)("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'")).

RS Staffing proffers the same reason for Tarver's termination in response to the retaliation claim that it proffers as a defense to Tarver's other claims. If client directive is the only legitimate reason articulated by RS Staffing, that reason may fail before a jury for the same reasons it may fail as a defense to

other claims.[9] Tarver has made it past summary judgment on his retaliation claim.

*Claim for Intentional Infliction of Emotional Distress*

To establish a *prima facie* case of IIED under Alabama law, a plaintiff must show that the defendant engaged in "[1] extreme and outrageous conduct [2] intentionally or recklessly [3] caus[ing] **severe** emotional distress," namely, emotional distress "so severe that no reasonable person could be expected to endure it." *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003)(emphasis added); *see also Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1319 (N.D. Ala. 2002)("The Supreme Court of Alabama has stated that 'by extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'"). The Alabama Supreme Court "has restricted the confines of this tort, allowing for recovery 'only in the most egregious of circumstances.'" *Thrasher*, 195 F. Supp. 2d at 1319 (citing *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993)).

---

[9]   RS Staffing points to the treatment of Cunningham in support of its proffered legitimate, non-discriminatory reason. (*See* Def.'s Reply p.6). Cunningham, like Tarver, failed to report to work on Sunday due to his religious beliefs. Cunningham was not fired. According to RS Staffing, if retaliation occurred, then Cunningham would also have been terminated. With the procedural posture in mind, however, the court must draw all reasonable inferences in Tarver's favor, which includes the inference that a lack of any record of employment problems up until Tarver's termination could mean that there were none and that Tarver was fired in retaliation for not working on Sunday. While what happened to Cunningham will certainly be relevant at trial, it does not disallow the claim's survival at summary judgment.

The discharge of an "at-will" employee can rise to this level only if the discharge violates public policy – it is not enough that the employee was wrongfully discharged. *See Wyatt v. BellSouth, Inc.*, 998 F. Supp. 1303, 1312 (M.D. Ala. 1998). The requirement that the conduct and circumstances be sufficiently egregious remains applicable to the discharge of an at-will employee in violation of federal law. *See Thrasher*, 195 F. Supp. 2d at 1318-1320 ("Plaintiff's allegation of discrimination with regard to overtime hours, scrutiny, and termination - which lasted a period of eight days - is not sufficiently egregious, as a matter of law, to support a cause of action for outrage under Alabama law.") and *compare with Rice v. United Ins. Co. of America*, 465 So. 2d 1100, 1102 (Ala. 1984)(Plaintiff's allegations of sex discrimination (pregnancy), which included, among other things, an alleged pattern of harassment that lasted for several months and was aimed at forcing plaintiff to take disability leave rather than work and that allegedly resulted in a miscarriage, found to conceivably support a cause of action for outrage under Alabama law.).

It appears from Tarver's complaint and his response to RS Staffing's motion that the basis for his IIED claim is the fact that RS Staffing did not provide him with a reason for his termination or prior notice of the alleged complaints against him. This is in addition to the wrongful termination itself. Tarver does

not allege a protracted pattern of harassment, in fact, he has voluntarily dismissed that claim. Nor does he allege any specific threats of intimidation, ridicule, humiliation, or abuse apart from the alleged wrongful termination itself. After consideration of the facts, the court finds that Tarver's allegations fall short of establishing the type of "extreme and outrageous" conduct necessary to state a claim of IIED under Alabama law.

*Claim for Negligent Supervision*

Tarver claims negligent supervision based on the following allegations: RS Staffing had notice of the conduct Tarver complains of; RS Staffing "negligently failed to discipline or terminate those employees, who actively discriminated, retaliated, harassed and conspired against [Tarver], on an ongoing basis, and failed to protect [him] from ongoing injury"; RS Staffing failed to implement its harassment and discrimination policies; and Tarver ultimately suffered a hostile work environment, harassment, and intentional discrimination. (Compl. ¶¶ 46-49). Tarver's claim for negligent supervision fails for two reasons. First, Tarver fails to offer sufficient evidence that RS Staffing knew, or should have discovered, that its employees were engaging in tortious behavior. Second, Tarver's only common-law Alabama tort claim, IIED, is due to be dismissed. This claim provided the only basis for Tarver's claim of negligent supervision.

In *Lane v. Central Bank of Alabama, N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983), the Alabama Supreme Court reiterated the elements of negligent supervision.

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

*Lane*, 425 So. 2d at 1100 (quoting *Thompson v. Havard*, 235 So. 2d 853 (Ala. 1970)). The burden is on the plaintiff to "establish by affirmative proof that the employer actually knew of the incompetence, or that the employer reasonably should have known of it." *Armstrong Bus. Serv., Inc. v. AmSouth Bank, et al.*, 817 So. 2d 665, 683 (Ala. 2001)(citing *Lane*, 425 So. 2d at 1100)(internal quotation marks omitted). Of course, considering the procedural posture, Tarver need only raise a material issue of genuine fact.

The complaint fails to identify those employees of RS Staffing who were negligently supervised. Tarver's response to RS Staffing's motion implicitly implicates Barefield and Bledsoe as those employees, alleging that they terminated Tarver without explanation for a discriminatory reason. However, there is no allegation that RS Staffing knew or should have known of any tortious conduct engaged in by Bledsoe or Barefield. RS Staffing presents evidence, which goes unrebutted by Tarver, that Tarver failed to utilize any

of the avenues provided under RS Staffing's anti-harassment policy, and Tarver does not offer any facts tending to show knowledge on the part of RS Staffing.

Even if Tarver had sufficiently alleged and offered proof that RS Staffing had the requisite knowledge required under this claim, the claim would still fail for lack of underlying tortious conduct. "In order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort." *Thrasher,* 195 F. Supp. 2d at 1320 (citing *Stevenson v. Precision Standard Inc.*, 762 So. 2d 820, 824 (Ala. 1999)). Tarver's only common-law, Alabama tort claim, IIED, will be dismissed. This claim provided the only basis for Tarver's claim of negligent supervision. The claims of discrimination cannot provide such a basis. *See Thrasher*, 195 F. Supp. 2d at 1320 ("Plaintiff cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination, but does not support a common-law tort."). RS Staffing's motion will be granted as to Tarver's negligent supervision claim.

## CONCLUSION

Whether the evidence will ultimately convince a jury to agree with Tarver on any of his claims is anybody's guess. However, Tarver has raised sufficient issues of material fact to survive RS

Staffing's motion for summary judgment, except for his state law claims. Based on the foregoing, RS Staffing's motion for summary judgment will be granted in part and denied in part.

DONE this 29th day of April, 2009.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE